David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiffs
*DEWANN WILLIAMS AND CAROLINA WILLIAMS*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DEWANN WILLIAMS AND CAROLINA WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>HONOR FINANCE, LLC,<br><br>Defendant. | Civil Action No.: _____<br><br><br><br>**COMPLAINT** |

For this Complaint, the Plaintiffs, DEWANN WILLIAMS AND CAROLINA WILLIAMS, by undersigned counsel, states as follows:

### JURISDICTION

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA.

2. This action also arises under Plaintiffs' Nevada common law right(s) to privacy and the Defendant's systematic intrusion into the Plaintiffs' seclusion.

3. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

6. The Plaintiffs, DEWANN WILLIAMS AND CAROLINA WILLIAMS ("Plaintiffs" or "Mr. and Mrs. Williams"), are adult individuals residing in Las Vegas, Nevada.

7. Plaintiffs at all times mentioned herein were each a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant HONOR FINANCE, LLC ("HONOR FINANCE"), is doing business in the State of Nevada.

9. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

10. HONOR FINANCE at all times acted by and through one or more of its agents or representatives.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone dialing systems.

13. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

>    (A)   to store or produce telephone numbers to be called, using a random or sequential number generator; and

>    (B)   to dial such numbers.

14. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The

FCC also recognized that wireless customers are charged for incoming calls.[1]

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

17. On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

18. Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

19. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

20. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id.* at ¶ 61.

21. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id.* at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

22. In or about October 2016, the Plaintiffs leased a vehicle from Honor Finance (the "Loan"). Due to a series of financial setbacks they were unable to maintain payments on the vehicle resulting in collection calls.

23. Starting March 2017, the Plaintiffs received numerous calls from the Defendant from a flurry of phone numbers seeking to collect on the Loan as follows: 702-978-5353, 847-773-3030, 847-733-0300, 702-359-0209, 702-701-5293, 702-637-3936, 702-242-8299, and possibly others from the Defendant.

24. Upon receiving collections calls from Honor Finance, no later than March 2017 the Plaintiffs, and each of them (since they were both receiving collection calls from Honor Finance), instructed Honor Finance's collection representative to "stop all calls" to them.

25. The Plaintiff's echoed this request from their first "revocation" effort in March 2017 through the date of filing this instant action.

26. However the calls did not cease resulting in the below written request to cease calls mailed by the Plaintiffs to HONOR on or about April 27, 2017:



…

…

…

…

27.     Indeed, the Plaintiffs (in addition to their numerous oral consent revocation efforts) sent Honor Finance written demands to cease and desist calls in both April 2017 and March 2018 for any reason as follows:



28.     A similar demand to "stop calling period" was mailed and emailed to Honor Finance in April 2017.

29.     During numerous calls with Honor Finance over the last year, the Honor Finance representatives advised Mr. and Mrs. Williams that their account would be noted to cease calls.  However, calls persisted nonetheless.

30.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

31. Indeed, on several instances the Plaintiffs received calls from Honor Finance after March 2017, and Honor Representative would come online several seconds after the Plaintiffs answered the call.

32. The Honor Finance representative would then state "thank you calling Honor Finance" as though the Plaintiffs initiated the calls to Honor Finance – when in fact just the opposite occurred (Honor Finance initiated the calls to the Plaintiffs).

33. In part, because of the connections delays and this befuddling connection response from the Honor Finance representatives indicates that Honor Finance used an automated outbound dialing system combined with an automated call distribution system, commonly known as, automatic call distributor (ACD), which is an automated telephony device that answers and distributes calls to a specific group of terminals or agents within an organization.

34. All the calls discussed above were initiated by Defendant or its agent/s to Plaintiffs cellular telephone numbers ending in "9326" (Mr. Williams cell phone) and/or "9327" (Mrs. Williams' cell phone) via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

35. As explained above, in the calls that Plaintiffs did answer, there would usually be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from Defendant.

36. Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff.

37. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

38. Predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

39. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

40. As discussed above, Plaintiffs each instructed Defendant or its agent(s) not to call the Plaintiff's cell phone ever again no later than March 2017 thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

41. Moreover, Defendant did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

42. However, Defendant placed calls to the Plaintiffs' cellular telephone without consent using an ATDS in violation of the TCPA.

43. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

44. The telephone numbers that Defendant used to contact Plaintiffs were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

45. Defendant's calls to Plaintiffs' cellular telephones were not for "emergency purposes."

46. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

47. The Plaintiffs suffered actual harm and loss, since each of the unwanted calls depleted the Plaintiffs' cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

48. Plaintiffs also suffered from an invasion of a legally protected interest by placing calls to the Plaintiffs' personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiffs' right to privacy.  The TCPA protects consumers from this precise behavior.

49. Plaintiffs have a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

50. "[W]hen a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance." *Toldi v. Hyundai Capital Am.*, No. 2:16-CV—01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

51. Plaintiffs were also personally affected, since the Plaintiffs felt that the their privacy had been invaded when the Defendant placed calls to their phones without any consent to do so.

52. The injuries suffered by Plaintiffs are concrete because Defendant's violations caused Plaintiffs to suffer an invasion of privacy.

## COUNT I

### Negligent Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq*.)

53. Plaintiffs repeats and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

54. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiffs without Plaintiffs' prior express consent.

55. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

56. As a result of Defendant's negligent violations of the TCPA, Plaintiffs are each entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Additionally, Plaintiffs are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II

**Knowing and/or Willful Violations of the
Telephone Consumer Protection Act,
(47 U.S.C. § 227, *et seq.*)**

58. Plaintiffs repeats and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

59. Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiffs without Plaintiffs' prior express consent.

60. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

61. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiffs are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47

U.S.C. § 227(b)(3)(C).

62. Additionally, Plaintiffs are entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III
### Invasion of Privacy
### (Intrusion into Seclusion)

63. Plaintiffs incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

64. Consumers (like the Plaintiffs here) have an inherent right to privacy in collection matters.

65. To recover for the tort of a privacy invasion for an intrusion into seclusion, a plaintiff must prove the following elements: "(1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Kuhn v. Account Control Technology*, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (citing *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.,* 111 Nev. 615 (Nev. 1995), *overruled on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644 (Nev. 1997)).

66. Further, the Nevada Supreme Court has held that "in order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that that

expectation was objectively reasonable." *Id.* (citing *M & R Investment Co. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 493 (Nev. 1987)).

67. In addition, a defendant's actions must be highly offensive to a reasonable person. *See PETA,* 867 P.2d at 1133 (internal citation omitted). A court should consider the following factors in determining whether a particular action is highly offensive: "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (citations omitted).

68. Here, these elements are satisfied by a wide margin.

69. The Plaintiffs, an each of them, as pled herein allege that HONOR persisted in invasive and illegal collection conduct on dozens, if not 100's of occasions even after the Plaintiff's advised HONOR its conduct was abusive, harassing and annoying.

70. Indeed, in addition to the numerous verbal efforts instructing HONOR's agents to cease the harassing collection conduct, HONOR also disregarded at least two (2) written demands to HONOR (one of which was sent over a year prior to filing the instant complaint) demanding that HONOR cease all collection communications.

71.     HONOR persistent and reckless pattern of ignoring the Plaintiffs' pleas to let them live peaceably without the daily nuisance of HONOR's debt collection fell on deaf ears.

72.     Such conduct squarely and comfortably fits within Nevada's privacy law standards and the Plaintiffs have each stated claims against HONOR given HONOR's persistent and intentional intrusion into each Plaintiffs' solitude or seclusion which would be highly offensive to a reasonable person.  Indeed, HONOR could not reasonably ignore Plaintiffs' numerous efforts to cease collection conduct when it knew such collection efforts were annoying and harassing the Plaintiffs.  Nothing prevented HONOR from suing the Plaintiffs to collect the debt; but it instead chose to harass them both into repayment in violation of Nevada's common law right to privacy.

73.     HONOR and/or its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of this Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt after being advised HONOR's collection calls were to "cease" only to be persistently disregarded (dozens of times verbally and twice in writing) resulting in an invasion of Plaintiffs' privacy.

74.     Plaintiffs had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

75. The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against this Plaintiffs, resulted in multiple intrusions and invasions of privacy by HONOR which occurred in a way that would be highly offensive to a reasonable person in that position.

76. As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages and punitive in an amount to be determined at trial from each Defendant.

**WHEREFORE**, the Plaintiffs prays that judgment be entered against the Defendant awarding the Plaintiff:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
4. Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent invasion of privacy;
5. Punitive damages;
6. An award of attorney's fees and costs to counsel for Plaintiff; and

7. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 17, 2018

                            Respectfully submitted,

                    By /s/ David H. Krieger, Esq.

                          David H. Krieger, Esq.
                          Nevada Bar No. 9086
                          HAINES & KRIEGER, LLC
                          8985 S. Eastern Avenue, Suite 350
                          Henderson, Nevada 89123
                          Phone: (702) 880-5554
                          FAX: (702) 385-5518
                          Email: dkrieger@hainesandkrieger.com

                          Attorney for Plaintiffs
                          *DEWANN WILLIAMS AND*
                          *CAROLINA WILLIAMS*